**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:17-CV-00140-KDB-DSC**

| | | |
|---|---|---|
| **MICHAEL JONES,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **LOWE'S COMPANIES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant Lowe's Companies, Inc. ("Lowe's") Motion for Summary Judgment (Doc. No. 71), which Plaintiff Michael Jones ("Jones") opposes, and various motions related to the sealing and unsealing of the summary judgment record (Doc. Nos. 100, 104, 106, 138). The Court has carefully reviewed the motion and considered the parties' briefs and exhibits. For the reasons discussed below, the Court **GRANTS** Lowe's Motion for Summary Judgment. The Court **GRANTS IN PART** Plaintiff's Motion to Unseal (Doc. No. 100), **DENIES** Lowe's Motion to Seal Document 72 (Doc. No. 106), **DENIES** Lowe's Motions to Seal Document 105 (Doc. No. 104), and **GRANTS IN PART** Lowe's Motion to Seal Document 137 (Doc. No. 138).

## I.    RELEVANT BACKGROUND

This is an employment discrimination action based on 42 U.S.C. § 1981 and analogous North Carolina law. Plaintiff originally filed this case in Mecklenburg County Superior Court on February 15, 2017, alleging three causes of action: (1) discrimination in the termination of employment, in violation of 42 U.S.C. § 1981; (2) retaliation in the termination of employment, in violation of 42 U.S.C. § 1981; and (3) state law wrongful discharge, in violation of N.C. Gen.

Stat. § 143-422.2. (Doc. No. 1-1, at ¶¶ 105–120.) Plaintiff subsequently amended his Complaint to include a claim of defamation. (Doc. No. 1-1, at 33–34, ¶¶ 121–25). On March 17, 2017, Defendant removed the entire action under 28 U.S.C. §§ 1331 and 1441(a). (Doc. No. 1.) The Court has supplemental jurisdiction over the state law claims.

The undisputed facts are as follows: Lowe's originally hired Plaintiff, an African American male, in January 2013 in the position of Chief Merchandising Officer. (Doc. No. 72, at 2.) The following year, Lowe's promoted Plaintiff to the position of Chief Customer Officer ("CCO"). (*Id.*) In his new position, Plaintiff reported directly to Robert Niblock, Lowe's CEO and president at the time, and was part of the executive team. (*Id.*) Plaintiff performed his role well, and in 2015 Niblock informed the Lowe's board of directors of his decision to name Plaintiff as his "hit-by-the-bus successor," i.e., the person who would take over as Lowe's CEO if Niblock became suddenly incapacitated. (Doc. No. 73–3, at 11.)

In late 2015, at the request of its board of directors, Lowe's hired an outside consultant to perform an assessment of certain Lowe's executives. (*Id.* at 3.) The purpose of the assessment is disputed: Plaintiff contends that its purpose was to perform an "outside assessment of Plaintiff" and another Lowe's executive, Richard Maltsbarger, a Caucasian male, "as potential CEO successors." (Doc. No. 79, at 6.) Lowe's contends that this assessment was "designed to evaluate [Plaintiff] and other high-powered executives for their leadership qualities so that the executives could develop in certain areas" and notes that "there was no plan or announcement by Niblock during [Plaintiff's] employment that Niblock intended to retire." (Doc. No. 72, at 2–3.) Lowe's states that a total of six individuals were assessed. (*Id.*, at 10.) At minimum, the parties agree that results of the assessment were intended to be used "as a component of leadership succession planning," a process which the Lowe's board of directors undertook annually. (*Id.*)

Jones and Maltsbarger were both identified as executives with "long-term potential" for possible CEO succession. (*Id.*) There is no evidence that Niblock ever expressed any intention to retire or otherwise step down from his role at Lowe's prior to March 2018, more than two years after the assessment began and seventeen months after Plaintiff was terminated.

As a part of the assessment process, the outside consultant met with Plaintiff and Maltsbarger and interviewed a selection of their peers, subordinates, and Niblock. (Doc. No. 79, at 8–9.) The outside consultant compiled her results into reports that assessed the preparedness and capabilities of the two candidates. (*Id.* at 9.) She also created a "CEO Profile" report which was intended to create an objective standard by which Plaintiff and Maltsbarger were measured. (Doc. No. 79, at 12.)

The outside consultant first reviewed the assessment results with Niblock and two members of Lowe's Human Resources department in early March 2016. (Doc. No. 79, at 9.) Evidence demonstrates that following this meeting, Niblock requested that the outside consultant make revisions to the objective "CEO Profile" and conduct additional interviews of peers and subordinates. (*Id.* at 12, 15.)

Following the presentation of the outside consultant's initial report, Plaintiff had a series of meetings with the outside consultant, Niblock, and individuals in Lowe's HR department to review his assessment results. The parties dispute what occurred during these meetings, but agree that Plaintiff took issue with the assessment results because he felt that they unfairly maligned his capabilities as an executive. Plaintiff testified that during these meetings, he repeatedly informed Lowe's HR that he would rather separate amicably "from the company with a package than be discredited in the assessment process." (*Id*. at 13.) Plaintiff testified he informed Niblock that he would like a separation package at least twice. (Doc. No. 72–2, at 36.)

Plaintiff further testified that following one of these meetings, at the end of May 2016, he moved personal belongings out of his office. (*Id.*, at 33.) Plaintiff testified that by June of 2016, he had "made recruiters aware that [he] would listen to opportunities" and "fully intended to continue listening to opportunities." (*Id.*, at 36.)

Lowe's takes the position that Plaintiff, through his statements in these meetings and actions in the office, "left little doubt that [he] had resigned from Lowe's, mentally and passive aggressively, if not formally." (Doc. No. 72, at 8.) Niblock testified that in the months following Lowe's receipt of the consultant's initial report, Plaintiff grew increasingly disengaged from his work at Lowe's. (*Id.* at 9.) Specifically, Niblock stated that Plaintiff stopped "checking in," that his "hours in the office dropped," and his participation declined at key off-site meetings. (*Id.*) Niblock testified he asked Plaintiff to "decide whether he was committed to Lowe's or not" after Plaintiff moved belongings out of his personal office. (Doc. No. 72, at 13.) He also testified he later called Plaintiff and asked why he was not listed on the agenda of a meeting that Niblock expected Plaintiff to attend. (Doc. No. 97, at 10.) Niblock testified that in August 2016, he informed the Lowe's board of directors that Plaintiff had concerns about the assessment process and had indicated his preference for a severance package. (Doc. No. 72–3, at 5.) Niblock testified he told the board he would continue to monitor the situation. (*Id.*)

On October 16, 2016, the outside consultant delivered a new draft report accounting for the additional work on the assessments and CEO profile that occurred over the summer of 2016. (Doc. No. 79, at 17.) Plaintiff testified that Niblock set a meeting with him to discuss the results of the revised assessment on October 27, 2016. (*Id.* at 18.) It is undisputed that Niblock terminated Plaintiff during this meeting. (*Id.*; Doc. No. 72, at 10.) Niblock testified he wished to terminate Plaintiff prior to a meeting of the Lowe's board of directors in November 2016

because Niblock "really didn't think I wanted to see [Plaintiff] have to go through a board meeting interacting with board members, knowing that there was some concern about his future with the organization." (Doc. No. 72–3, at 29.)

As summarized *supra,* Plaintiff filed this lawsuit on February 15, 2017. After Plaintiff filed suit, Lowe's issued a public statement that Plaintiff's lawsuit was "unfounded and irresponsible" and had "no basis in reality." (Doc. No. 88–20, at 1). Subsequently, Plaintiff amended his Complaint to add his claim for defamation.

Discovery for this action is governed by a Protective Order entered by Magistrate Judge David Cayer on October 23, 2017. (Doc. No. 18.) The Protective Order provides for designation of documents that fall within the following categories as confidential: (1) non-public financial, trade secret, or proprietary business or technical information that may be of value to a competitor; (2) any information of a personal or intimate nature regarding any individual and/or information protected by the right to privacy; and (3) any other category of information hereinafter given "Confidential" status by the Parties, upon written agreement, or the Court. *Id.* ¶ 5.

The Protective Order specifically states that a party may challenge confidentiality designation of any document at any time. *Id*. ¶ 12. It also provides that each party must file documents designated as confidential under seal, unless the filing party receives written permission from the designating party for public filing. *Id*. ¶ 19. However, in the same paragraph, it clarifies:

> "It is understood by the Parties that any documents which become part of an official judicial proceeding or which are filed with the court are public documents, and that such documents can and will be sealed by the Court only upon motion and in accordance with applicable law. This Protective Order does not provide for automatic sealing of the documents."

*Id.*

On October 31, 2018, Defendant filed its Motion for Summary Judgment, (Doc. Nos. 71–72), under seal. Defendant did not submit a motion to seal its memorandum and exhibits prior to filing them, in violation of Local Rule 6.1.[1] On November 19, 2018, Plaintiff filed his Opposition to Defendant's Motion for Summary Judgment under seal, attaching 83 exhibits. (Doc. No. 79.) Unlike Defendant, Plaintiff did file an unopposed motion to seal prior to filing his Opposition and exhibits (Doc. No. 78), which Magistrate Judge Cayer granted in a text-only order without elaboration on November 20, 2018. Plaintiff's Motion to Seal states that "[g]iven the Protective Order in place to maintain confidentiality of certain information, Plaintiff's counsel believes that much of the Response and Exhibits falls within the Order." *Id.*

Defendant subsequently filed a sealed Reply in support of its Motion for Summary Judgment (Doc. No. 97), this time appropriately preceded by a Motion to Seal (Doc. No. 96). The motion to seal stated that Lowe's sought the seal because the "Reply and exhibits contain sensitive business and other confidential and proprietary information that is subject to the Protective Order." Magistrate Judge Cayer granted the Motion to Seal on December 4, 2018 in a text-only order.

On December 12, 2018, Plaintiff filed a Motion to Unseal Summary Judgment Filings and to Open Hearing ("Motion to Unseal"). (Doc. No. 100.) He also filed a supporting memorandum. (Doc. No. 101.) Plaintiff did not move to seal these filings. Defendant filed an

---

[1] Lowe's belatedly filed a Motion to Seal its initial summary judgement filings on December 26, 2018. (Doc. No. 106.) The Motion alleges (1) that the summary judgement filings "contain sensitive business and other confidential and proprietary information that is subject to the Protective Order;" (2) that Defendant filed them under seal; and (3) that that Defendant "files this Motion in an abundance of caution." *Id.* Plaintiff filed a response to this motion on January 9, 2019. (Doc. No. 111.) Lowe's filed a reply on January 16, 2019. (Doc. No. 113.)

Opposition to Plaintiff's Motion to Unseal on December 26, 2018, (Doc. No. 105.)  It also filed a motion to seal its Opposition.[2]  (Doc. No. 104.)  On February 2, 2019, the Court ordered the parties "to meet and confer to identify the specific documents which the parties would like the Court to examine to determine whether they should remain sealed. Additionally, the parties are encouraged to identify any portions of relevant documents which can be redacted to protect confidential and proprietary information."  (Dkt. 119.)

On April 22, 2019, Plaintiff filed a report "on the status of the dispute of unsealing summary judgment documents" (Doc. No. 122), preceded by a motion to seal the report (Doc. No. 121).   Defendant filed a response to Plaintiffs' report on May 6, 2019 (Doc. No. 126), as well as a motion to seal its response (Doc. No. 127).  Along with its response, Defendant attached an exhibit charting the parties' positions on unsealing the various summary judgment exhibits.  Lowe's report identified a total of twenty-six exhibits on which the parties could not reach an agreement.[3]

The Court considered the Parties' oral arguments on Lowe's Motion for Summary Judgment at a hearing on July 19, 2019.  At the conclusion of the hearing, the Court ordered Lowe's to submit a brief within 30 days addressing whether or not the exhibits still subject to dispute should be sealed or unsealed in accordance with the established Fourth Circuit standard on sealing summary judgment filings.  Lowe's filed the requested brief on August 19, 2019. (Doc. No. 137.)  Lowe's also filed a motion to seal its brief (Doc. No. 138.)

---

[2] Plaintiff filed a response in opposition to this motion to seal on January 8, 2019.  (Doc. No. 110).  Lowe's filed a reply on January 15, 2019.  (Doc. No. 112.)
[3] During the hearing on Lowe's motion for summary judgment, counsel for Plaintiff did not dispute the accuracy of this list.

## II.    LEGAL STANDARD

### A. Motions for Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)**.** "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015)

(quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).  "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

### B. Motions to Seal the Summary Judgment Record

In general, the public has a right of access to judicial proceedings that stems from two sources: the common law and the First Amendment. *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir. 1988); *see also Press–Enterprise Co. v. Superior Court of Cal.,* 464 U.S. 501, 508–09 (1984) (discussing the importance of an open trial as a means of both ensuring and giving the appearance of fairness in the judicial process).  Under the more rigorous First Amendment standard, "denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest."  *Id.; see also Press–Enterprise Co.,* 464

U.S. at 509 ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606–07 (1982) ("[I]t must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.").

The Fourth Circuit applies the First Amendment right of access to documents summitted in support of summary judgment motions in civil cases. *See Rushford*, 846 F.2d at 252 (applying the First Amendment right of access standard to summary judgment filings and noting "summary judgment adjudicates substantive rights and serves as a substitute for a trial"). *See also, e.g., Painter v. Doe*, No. 3:15-CV-369-MOC-DCK, 2016 WL 3766466, at *3 (W.D.N.C. July 13, 2016) ("When a judicial document or record sought to be sealed is filed in connection with a dispositive motion, the public's right of access to the document in question arises under the First Amendment.") (citing *Rushford,* 846 F.2d at 253). *See also Rosenfeld v. Montgomery Cty. Pub. Sch.*, 25 F. App'x 123, 127 (4th Cir. 2001) (reversing and remanding case for application of the *Rushford* procedure to the sealing of summary judgment filings). Accordingly, "a party moving to seal documents filed in support of a motion for summary judgment in a civil case bears a heavy burden." *Jennings v. Univ. of N. Carolina at Chapel Hill*, 340 F. Supp. 2d 679, 681 (M.D.N.C. 2004).

To limit access to documents submitted in connection with a summary judgment motion, the party seeking to seal the documents must make a showing "that the denial [of access] serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." *Rushford*, 846 F.2d at 253. However, courts have recognized that in certain circumstances, "private interests might also implicate higher values sufficient to override

(or, in an alternative mode of analysis, to except the proceeding or materials at issue from) the First Amendment presumption of public access." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580 (E.D. Va. 2009). *.See also Morris v. Cumberland Cty. Hosp. Sys., Inc.,* No. 5:12-CV-629-F, 2013 WL 6116861, at *3 (E.D.N.C. Nov. 13, 2013) ("In the past, this court and others have concluded that the need to keep confidential proprietary business information or trade secrets may constitute a "higher value" that can overcome both the common law and the First Amendment rights of access in appropriate circumstances.").

Furthermore, before sealing the documents, "the district court must follow the procedural requirements as laid out in *In re Knight Publ'g Co.,* 743 F.2d 231 (4th Cir. 1984)." *Id.* These are:

1. The district court must give the public adequate notice that the sealing of documents may be ordered. *In re Knight,* 743 F.2d at 234.
2. The district court must provide interested persons "an opportunity to object to the request before the court ma[kes] its decision." *Id.* at 235.
3. If the district court decides to close a hearing or seal documents, "it must state its reasons on the record, supported by specific findings." *Id.* at 234.
4. The court must state its reasons for rejecting alternatives to closure. *Id.*

*See generally Rushford,* 846 F.2d at 253–54.

## III.     MOTION FOR SUMMARY JUDGEMENT

### A.  Plaintiff's Federal Discrimination Claim

42 U.S.C. § 1981 "prohibits racial discrimination in the making and enforcement of contracts." "In a typical discriminatory discharge case, the plaintiff establishes a prima facie case by showing '(1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that . . . he was performing at a level that met his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class.'" *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 219 (4th Cir. 2016) (quoting King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003)). The elements of

a prima facie claim of discrimination under § 1981 and a discrimination claim under Title VII are the same. *Gairola v. Commonwealth of Virginia Dep't of General Serv.,* 753 F.2d 1281, 1285–86 (4th Cir. 1985).

Race discrimination claims filed under 42 U.S.C. § 1981 are analyzed using the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Plaintiff must first establish a prima facie case of discrimination or retaliation. *Id.* at 802. If Plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 336 (4th Cir. 2011). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–511 (1993). The plaintiff must then prove, by a preponderance of evidence, "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original)).

1. Plaintiff states a prima facie case of discriminatory discharge.

Plaintiff argues that he has stated a prima facie case for discriminatory discharge by demonstrating that (1) he is African American; (2) had eminent qualifications for the job and performed his duties at a high level for over three years; (3) was fired; and (4) his position as CCO was filled immediately by a white person. (Doc. No. 79, at 19.) In its briefing, Lowe's does not clearly make an argument to refute this. For this reason, the Court proceeds with the assumption that Plaintiff has adequately stated a prima facie case for discriminatory termination.

2. <u>Lowe's articulates a legitimate, non-discriminatory reason for the adverse employment action.</u>

Under the *McDonald Douglas* framework, Lowe's next has the burden to demonstrate that it has a legitimate, non-discriminatory reason for terminating Plaintiff. "This burden, however, is a burden of production, not persuasion." *Holland v. Washington Homes, Inc*., 487 F.3d 208, 214 (4th Cir. 2007). Here, Lowe's provides testimony and affidavits demonstrating that it fired Jones because "Jones chose . . . to resign when he removed his personal items from his office, repeatedly asked to be severed with a package, and disengaged from his role as one of Lowe's top executives." (Doc. No. 72, at 13–14.) Accordingly, it has met its burden of production, and "the *McDonnell Douglas* frame-work—with its presumptions and burdens— disappear[s], and the sole remaining issue [is] discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000) (internal quotation marks and citations omitted). "In other words, the burden shifts back to [plaintiff] to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (quoting *Reeves,* 530 U.S. at 143).

3. <u>Plaintiff has failed to provide probative evidence that Lowe's stated reason for firing Plaintiff was a pretext to mask racial discrimination.</u>

"Once the question comes down to pretext, a plaintiff 'must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Holland*, 487 F.3d at 214 (quoting *Reeves,* 530 U.S. at 143 (internal quotation marks omitted)). "A plaintiff could accomplish this goal 'by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Burdine*, 450 U.S. at 256). On the other hand, an employer is entitled to summary judgment on the issue of pretext if the employee "create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. Moreover, "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for a discharge." *Dockins v. Benchmark Commc'ns*, 176 F.3d 745, 749 (4th Cir. 1999) (quotation omitted).

In *Holland*, the Fourth Circuit reviewed the type of evidence necessary to create an issue of fact as to whether an employer's proffered explanation is true. Citing *Reeves,* 530 U.S. 133, the court explained

> In *Reeves,* the company claimed that Reeves was fired because he had failed at his responsibility of recording worker attendance. Reeves, however, offered evidence that he properly maintained the attendance records. This evidence, the Supreme Court explained, combined with the strong evidence supporting Reeves's prima facie case, was enough to support a jury's verdict of liability. *Reeves,* 530 U.S. at 146, 120 S. Ct. 2097. Thus, the Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S. Ct. 2097 (emphasis added). But the Supreme Court cautioned that this will not always be the case; for example, judgment as a matter of law may be appropriate if a "plaintiff created only a weak issue of fact as to whether the employer's reasons were untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* Thus, a key factor for courts to consider is "the probative value of the proof that the employer's explanation is false." *Id.* at 149, 120 S. Ct. 2097.

*Id.* at 216.

Here, Niblock's perception of Plaintiff's workplace attitude is clearly documented in the record by his testimony. Niblock testified that Plaintiff became less engaged in the office, stopped checking in with Niblock, did not stay through the end of a strategy group meeting, and did not join the agenda at another key meeting Niblock thought he would have been involved in. (Doc. No. 97, at 9–10.) In addition, both Niblock and Lowe's board member James Morgan testified that Niblock told the Lowe's board of directors at its August 2016 meeting that he was concerned Plaintiff "had lost his focus, was less engaged, had moved stuff out of his office, was sharing with other people that he [ ] might be seeking a severance agreement." (Doc. No. 97–5 at 5; Doc. No. 72–3 at 5.) Niblock informed the Lowe's Board that he would continue to monitor Jones "closely" but that he was "concerned" and "things needed to get better . . . for Mr. Jones to remain an executive officer of the company." (Doc. No. 97–5 at 5.)

Plaintiff's Opposition states that there is "record evidence that Plaintiff was *not* terminated because he became disengaged and obsessed with finding another job." (Doc. No. 79, at 20.) However, Plaintiff fails describe this alleged evidence with any particularity. Instead, Plaintiff attacks the credibility of evidence cited by Lowe's as proof of Niblock's legitimate, non-discriminatory reason for firing Plaintiff. For example, Plaintiff states there "is no documented record of anyone presenting engagement concerns to Plaintiff before his termination" and accuses Lowe's of submitting a false declaration to the Court. (*Id.* at 21.) However, Plaintiff's own notes indicate that Niblock and Plaintiff discussed the fact that Plaintiff cleared out his office, and that Niblock asked Plaintiff to decide if he was committed to Lowe's. Furthermore, Niblock testified he called Plaintiff after observing Plaintiff was not listed on a meeting agenda to ask whether Plaintiff was planning to present. The Court finds that this

constitutes undisputed evidence of Niblock presenting engagement concerns to Plaintiff prior to his termination.

Next, Plaintiff cites praise by coworkers and describes certain tasks he undertook at work during the summer of 2016 as evidence that he "remained professional and fully engaged during the time between the April assessment report meeting and his termination." (Doc. No. 79, at 21.) Specifically, Plaintiff cites praise from an organizer of an investors' conference, notes that he organized a meeting between Lowe's executives and Walgreens executives, and "was up early" working on Labor Day. (*Id.*) He also notes that he traveled to two store locations and met with Lowe's employees at each. (*Id.*) However, none of this evidence refutes Niblock's testimony that Plaintiff stopped checking in with him, failed to attend other meetings either in part or full, cleaned out his office, and repeatedly asked for a severance package. Furthermore, the opinions of co-workers do not create a material issue of fact concerning pretext. *Iskander v. Dep't of Navy*, 116 F. Supp. 3d 669, 679 (E.D.N.C.), *aff'd*, 625 F. App'x 211 (4th Cir. 2015). Nor does Plaintiff's personal assessment of his behavior. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the Plaintiff."). Niblock does not claim that Plaintiff completely stopped working, and therefore the presented evidence of Plaintiff's work activity fails to persuade the Court that any factfinder could find Niblock's stated reasons for terminating Plaintiff "unworthy of credence."

The Court is similarly unpersuaded that Niblock's alleged "affinity for Maltsbarger" and alleged manipulation of the outside assessment is material to the issue of whether Niblock sincerely believed that Plaintiff was disengaging from his position at Lowe's. First, Plaintiff contends that "Plaintiff's termination . . . accomplished what seven months of efforts could

not—Maltsbarger was the preferred CEO successor." (Doc. No. 79, at 18.) However, Plaintiff has not provided any evidence substantiating his theory that Niblock fired him in order to force the Lowe's board of directors to name Maltsbarger as CEO successor. Indeed, there is no evidence that the outside assessment had any meaningful consequences at all. Maltsbarger was never promoted to CEO. The outside consultant who performed the assessment, Dr. Christine Rivers, testified that "there was no imminent CEO succession" and that Niblock was "looking at three to five, perhaps, years." (Doc. No. 72–6, at 9.) She testified that the results of the assessment were to be used for development and long-term planning. (*Id.*) Plaintiff provides no evidence refuting this testimony, nor evidence that indicates Niblock had any intention or plan to retire. Based on the evidence in the record, "CEO successor" appears to have been a symbolic title, if not illusory. Moreover, Plaintiff utterly fails to address the inconsistency between his theory that Niblock fired him in order to prevent the Lowe's board of directors from naming him CEO Successor, and the fact that Niblock *did* recommend Plaintiff as his "hit-by-the-bus successor" in 2015. Plaintiff also fails to reconcile this theory with the fact that in February 2016, months before Plaintiff was terminated, Niblock rated Plaintiff as a "leading performer" in Plaintiff's annual review. (Doc. No. 79, at 6, n.3.) In summary, the Court finds Plaintiff's theory that Niblock sought to terminate Plaintiff so that Maltsbarger could be named "CEO successor" conclusory and therefore immaterial to the issue of pretext. *Hux v. City of Newport News, Va.,* 451 F.3d 311, 315 (4th Cir. 2006) ("Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual . . . by raising points that are wholly irrelevant to it.").

Even if Plaintiff did present evidence that the title of "CEO Successor" was a meaningful one, his theory that Niblock terminated him because of race is still unpersuasive as the record establishes that Niblock had previously approved the hiring and promotion of Plaintiff to his role

as CCO in the two years prior to his termination. As Lowe's points out, the "same-actor" inference undermines Plaintiff's claim that Niblock discriminated against him. *See Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (explaining the fact that the employee was hired and fired by the same person within a relatively short time span "creates a strong inference that the employer's stated reason for acting against the employee is not pretextual"); *see also Howard v. Coll. of the Albemarle*, 262 F. Supp. 3d 322, 333 (E.D.N.C.), *aff'd*, 697 F. App'x 257 (4th Cir. 2017) (considering same-actor inference and finding that no reasonable jury could find decisionmaker's stated reason for terminating employee was pretextual to mask sex discrimination). The fact that Niblock designated Plaintiff as his "hit-by-the-bus successor" in 2015 and gave Plaintiff top performance ratings in February 2016 is relevant here too. First, Plaintiff argues that Niblock terminated him because he did not want to name an African American man as CEO Successor, but Niblock had in fact named Plaintiff as his immediate successor previously. Assuming *arguendo* that the designation of CEO Successor had import, this fact leads to a strong inference that Niblock did not terminate Plaintiff in order to avoid naming him CEO Successor based on his race. Moreover, Plaintiff contends in his Opposition that he realized Niblock had a race-based preference for Maltsbarger in August 2015, which is the same period of time when Niblock named Plaintiff his as his contingent successor and also was so pleased with Plaintiff's performance he rated him as a "leading performer." Accordingly, the Court finds Plaintiff provides nothing other than his own conclusions to demonstrate that Niblock acted against him based on his race.

In summary, Plaintiff has failed to carry his burden to produce probative evidence demonstrating that there is any genuine issue of fact as to whether Niblock's stated reason for terminating him was a pretext for racial discrimination. Viewing the record in the light most favorable to Plaintiff, no rational jury could find that Lowe's, through Niblock, was dishonest when it terminated him for disengaging from his role. Plaintiff presents no evidence

demonstrating that Niblock did not sincerely believe that Plaintiff was withdrawing from his role at work, and even admits he engaged in several of the behaviors Niblock cites as the basis for his decision. Plaintiff admits he expressed interest in leaving Lowe's with a severance package to multiple individuals over a period of months. He admits he began seeking other job opportunities. He admits he took personal effects out of his office. Niblock's testimony and Plaintiff's notes demonstrate that Niblock did in fact speak to Plaintiff about his commitment to Lowe's. Niblock raised concerns about Plaintiff's engagement with the Lowe's board of directors two months prior to Plaintiff's termination. Finally, though Plaintiff presents the theory that Niblock fired Plaintiff in order to elevate Maltsbarger to the role of "CEO Successor," he fails to demonstrate that such a title had any effective meaning, and moreover fails to account for the fact that Niblock had, in fact, named Plaintiff as his "hit-by-the-bus successor" one year prior to his termination and given Plaintiff top performance ratings the same year he was terminated.

Fourth Circuit law clearly states that "'when an employer articulates a reason for discharging the plaintiff' that the statute does not proscribe, 'it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" *Villa v. CavaMezze Grill, LLC,* 858 F.3d 896, 901 (4th Cir. 2017) (*quoting DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998). Considering the record before the Court, Plaintiff has failed to demonstrate that Niblock's stated reason for terminating him is "unworthy of credence." For this reason, the Court grants Lowe's motion for summary judgment on Plaintiff's discriminatory discharge claim. *See Marchmon v. Securitas Sec. Servs.*, 994 F. Supp. 2d 742, 748–49 (W.D.N.C.), *aff'd sub nom. Marchmon v. Securitas Sec. Servs. USA, Inc.*, 569 F. App'x 183 (4th Cir. 2014) (granting summary judgement in favor of employer where employee "offer[ed] no facts to suggest that [defendant decision makers] did not

believe sincerely and in good faith that[she] was not performing her job satisfactorily"). *See also Howard*, 262 F. Supp. At 333 (granting summary judgment in favor of employer where employee failed to present admissible evidence suggesting that employer's stated reason for discharging him was a pretext to mask sex discrimination).

## B. Plaintiff's Federal Retaliation Claim

Title VII prohibits an employer from discriminating against his employee because he "has opposed any . . . unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a). To make a prima facie case for a retaliation claim, Plaintiff must show that "(i) that [he] engaged in protected activity, (ii) that [his employer] took adverse action against [him], and (iii) that a causal relationship existed between the protected activity and the adverse employment action." *Guessous v. Fairview Prop. Investments*, LLC, 828 F.3d 208, 217 (4th Cir. 2016) (*quoting Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). Then, if Defendant offers a legitimate, non-discriminatory reason for the action in question, Plaintiff must prove by a preponderance of the evidence that the proffered reason was pretextual. *Id.*

### 1. Plaintiff fails to establish a prima facie case of retaliation.

Plaintiff's retaliation claim fails as a matter of law because Plaintiff fails to sufficiently establish a causal connection between his complaints to HR regarding diversity concerns and his termination. Plaintiff alleges he complained to the head of Lowe's HR department about Lowe's alleged unfair treatment of three other African-American employees. Plaintiff further alleges that he was fired by Niblock in retaliation for these complaints. However, during oral argument for this motion, counsel for Plaintiff was unable to point to any evidence in the record establishing that Niblock had any knowledge of Plaintiff's complaints to HR when he fired Plaintiff. "[B]ecause [Title VII's] focus is the employer's subjective motivation for the action,

the facts the decision-maker actually perceived matter." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017). *See also Dowe v. Total Action against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("[B]y definition, an employer cannot take action because of a factor of which it is unaware."). Accordingly, Plaintiff has failed to establish the third element of his retaliation claim. The Court therefore grants summary judgment in favor of Lowe's on Count II.

2. <u>Even if Plaintiff did establish a prima facie case of retaliation, his claim still fails as he cannot demonstrate that Lowe's stated reason for firing him is pretextual.</u>

Even if Plaintiff did establish a prima facie case of retaliation, he has failed to produce evidence demonstrating that Lowe's stated reason for terminating him is unworthy of credence. Plaintiff may prove pretext by showing that the alleged nondiscriminatory "explanation [for termination] is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." *Lloyd v. New Hanover Reg'l Med. Ctr.*, No. 7:06-CV-130-D, 2009 WL 890470, at *5 (E.D.N.C. Mar. 31, 2009), *aff'd*, 405 F. App'x 703 (4th Cir. 2010) (quoting *Mereish v. Walker,* 359 F.3d 330, 336 (4th Cir. 2004)). For the same reasons discussed *supra*, Plaintiff has not done so. For this reason this additional reason, his retaliation claim must fail.

**C. Plaintiff's State Law Wrongful Discharge Claim**

Plaintiff also asserts a claim for state law wrongful discharge under N.C. Gen. Stat. § 143-422.2. North Carolina law relies on federal authority to establish the standards applicable to state law wrongful discharge claims. *North Carolina Dep't of Correction v. Gibson,* 308 N.C. 131, 141 (1983). *See also Mumford v. CSX Transp.,* 878 F. Supp. 827, 832 (M.D.N.C. 1994), *aff'd sub nom. Mumford v. CSX Transp., Inc.,* 57 F.3d 1066 (4th Cir. 1995). Because, as discussed above, Plaintiff fails to establish he is entitled to avoid summary judgment as to either

of his federal claims, the Court also grants Defendant's motion for summary judgment with respect to his state law wrongful discharge claim.

### D. Plaintiff's Defamation Claim

Plaintiff's defamation claim is governed by North Carolina law. "In order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Boyce & Isley, PLLC v. Cooper*, 211 N.C. App. 469, 478 (2011) (quoting *Tyson v. L'eggs Products, Inc*., 84 N.C. App. 1, 10–11 (1987)). The "statement must be a statement of fact, not opinion, but an individual cannot preface an otherwise defamatory statement with 'in my opinion' and claim immunity from liability." *Id.* (citing *Lewis v. Rapp*, 725 S.E.2d 597, 603 (N.C. Ct. App. 2012)). In North Carolina, there are four circumstances in which a plaintiff may allege that a false publication constitutes defamation *per se*: "(1) [when the publication] charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to ridicule, contempt, or disgrace, or (4) it tends to impeach one in his trade or profession." *Ellis v. Northern Star Co*., 388 S.E.2d 127, 130 (N.C. 1990) (quoting *Flake v. News Co.*, 195 S.E.2d 55, 60–61 (N.C. 1938)). Plaintiff contends the last two apply here.

In North Carolina, "[t]he truth of a statement is a complete defense*." Long v. Vertical Techs., Inc.*, 439 S.E.2d 797, 801 (N.C. Ct. App. 1994). "Whether a statement constitutes fact or opinion is a question of law for the trial court to decide." *Desmond v. News & Observer Pub. Co*., 772 S.E.2d 128, 135 (N.C. Ct. App. 2015). The Court must interpret the allegedly defamatory statements "in the context of the document in which they are contained, stripped of all insinuations, innuendo, colloquium and explanatory circumstances," and within only the "four

corners" of the document. *Nucor Corp. v. Prudential Equity Group, LLC*, 659 S.E.2d 483, 486 (N.C. Ct. App. 2008). "In determining whether a statement can be reasonably interpreted as stating actual facts about an individual, courts look to the circumstances in which the statement is made. Specifically, we consider whether the language used is loose, figurative, or hyperbolic language, as well as the general tenor of the article." *Desmond,* 772 S.E.2d at 135 (quoting *Lewis v. Rapp*, 725 S.E.2d 597, 603 (2012)). "In other words, '[r]hetorical hyperbole and expressions of opinion not asserting provable facts are protected speech.'" *Lewis v. Rapp,* 725 S.E.2d 597, 603 (2012) (quoting *Daniels v. Metro Magazine Holding Co., L.L.C.,* 634 S.E.2d 586, 590 (2006)).

Plaintiff bases his defamation claim entirely on the Defendant's publicized statement it made after Plaintiff instigated the current suit. Based on Plaintiff's Opposition, the following statements from the press release are at issue:

> (i)    "Any suggestion that Lowe's—or any individual executive at Lowe's— discriminated against Mr. Jones because of his race is completely unfounded and irresponsible."
> (ii)    "Mr. Jones' allegations have no basis in reality."
> (iii)    "Mr. Jones demanded an unreasonable severance package valued at over $9 million."
> (iv)    "Mr. Jones' demeanor changed dramatically following a leadership assessment process in which he and other Lowe's senior executives were evaluated."
> (v)    "[Mr. Jones] increasingly became disengaged from Lowe's in numerous ways."

Lowe's contends that it is entitled to summary judgment on Plaintiff's defamation claim because the statements concern nonactionable matters of opinion or are otherwise true statements. (Doc. No. 72, at 19.) The Court agrees. Specifically, the Court finds statements (i) and (ii) are protected speech because they are "rhetorical hyperbole and expressions of opinion not asserting provable facts." The Court further finds that Plaintiff has failed to submit evidence

demonstrating that any reasonable dispute exists as to whether the defense of truth applies to statements (iii), (iv), and (v).

In response to Lowe's motion for summary judgment, Plaintiff argues that summary judgment is inappropriate because "Defendant's alleged 'opinion' [that Plaintiff disengaged] is based on a knowingly false representation of what happened." (Doc. No. 79, at 25.) The only evidence Plaintiff provides to refute the veracity of Lowe's statement that he became disengaged and that his demeanor changed is the evidence about his work activities during the summer of 2016 discussed *supra*. However, Lowe's did not claim that Plaintiff stopped working in the press release. Undisputed evidence demonstrates that Plaintiff repeatedly requested or expressed interest in a severance package, moved personal belongings out of his office, contacted recruiters about new opportunities, and stopped or reduced his participation in certain meetings after being assessed by the outside consultant. Plaintiff does not dispute that he was unhappy with the results of the outside assessment because he felt it impugned his capabilities as an executive, nor that he asked for a severance package during meetings set to discuss the results. Plaintiff does not dispute that after he removed his personal belongings from his office, Niblock asked him to decide if he was "committed to Lowe's." Therefore, based on the evidence presented, the Court finds Plaintiff has failed to demonstrate that any dispute of fact exists as to whether the defense of truth applies to statements (iii), (iv), and (v).

Finally, Plaintiff's Opposition admits that he did ask for a $9 million severance package, but apparently argues that disclosing such a fact is defamatory. The Court finds that statement (iii) is true to the extent that it states as a fact that Plaintiff requested a $9 million severance, and holds as a matter of law that the characterization of that amount as "unreasonable" is an expression of Lowe's opinion. Accordingly, statement (iii) cannot support a claim for

defamation.  For these reasons, the Court grants Defendant's motion for summary judgment on

Plaintiff's defamation claim.

## IV.     Sealing of the Summary Judgment Record

Finally, Plaintiff seeks to unseal the summary judgement record in accordance with

Fourth Circuit law.  The following motions related to the sealing of the summary judgment

record are currently pending:

     (i)       Plaintiff's Motion to Unseal Documents 79, 97, 72, and all summary judgment filings (Doc. No. 100)

     (ii)      Lowe's motion to seal Document No. 105, its response to Plaintiff's Motion to Unseal (Doc No. 104)

     (iii)     Lowe's motion to seal Document 72, its initial Motion for Summary Judgment filing, which was originally filed under seal without proper motion (Doc. No. 106)

     (iv)     Lowe's motion to seal Document 137, its "Court-Ordered Status Report Regarding Documents and Testimony to Remain Sealed" (Doc. No. 138)

### A.  Lowe's misstates the standard for sealing summary judgment filings.

As an initial matter, Lowe's argues in both its Opposition to Plaintiff's Motion to Unseal

and in its Court-Ordered Status Report Regarding Documents and Testimony to Remain Sealed

that the Fourth Circuit's established sealing regime does not apply to the summary judgment

filings of this case.  As the Court informed counsel for Lowe's at the July 19, 2019 hearing, its

understanding of the law on this issue is incorrect.

Lowe's first argues that the Court must not apply the *Rushford* standard in addressing

Plaintiff's motion to unseal because Plaintiff "previously (and repeatedly) agreed that [the

documents filed as exhibits to the summary judgment filings] should remain confidential."  (Doc.

No. 105, at 4.)  In support of its position, Lowe's cites an unpublished decision by the Fourth

Circuit, *United States v. Morgan*, 962 F.2d 8 (table) (4th Cir. 1992).

*Morgan* is a criminal case in which the defendant was convicted of a crime and sentenced.  Defendant subsequently appealed many aspects of his conviction, and filed a series of *pro se* motions seeking access to sealed documents filed in relation to a motion to correct the record on appeal.   The Fourth Circuit affirmed the sentencing court's decision to seal the documents on appeal by the defendant.  However, after other additional motion practice, including a fully-litigated FOIA request, defendant then filed a motion to unseal the documents.  This motion was denied by the sentencing court.  Defendant appealed, and the issue before the Fourth Circuit in *Morgan* was whether the sentencing court abused its discretion by denying the motion to unseal.

Reviewing the history of the case, the Fourth Circuit found no abuse of discretion, stating that while there is "some merit to his argument that an order sealing documents should not necessarily continue in perpetuity," "there must be some limit to a party's ability to repeatedly litigate the same issue." *Id.* at *3.  The Fourth Circuit held that "[w]here the motion is brought by a party that has had a full opportunity to litigate the initial imposition of the seal, the appropriate threshold question is whether or not that party has shown a change in circumstances sufficient to warrant a reconsideration of the seal." *Id.*

It is not clear when Lowe's contends Plaintiff had "a full opportunity to litigate the initial imposition of the seal." This is the first time the Court has considered the merits of the imposition of the seal.  Lowe's argument is further undermined by Lowe's own outstanding motion to seal its initial memorandum and exhibits filed in support of its motion for summary judgment.  Given that there was no motion filed by Lowe's to seal the summary judgment record, Plaintiff could not have litigated the issue before now.  Accordingly, Lowe's position that

Plaintiff must show a "change in circumstances" because he had a "full opportunity to litigate the initial imposition of the seal" is unpersuasive.

Furthermore, there are more recent and more analogous cases in the Fourth Circuit where the "change in circumstances" standard was not applied. For example, there is one unpublished Fourth Circuit case considering a situation where a party filed a motion to unseal summary judgment filings, prior to the court's decision on the motion for summary judgment, and the Fourth Circuit remanded the case for determination in accordance with the First Amendment principles articulated in *Rushford*. *See Rosenfeld v. Montgomery Cty. Pub. Sch.*, 25 F. App'x 123, 127 (4th Cir. 2001).

In *Rosenfeld*, the district court entered orders sealing the summary judgment record. The motion to unseal requested reconsideration of the seal. The district court ultimately ruled on the motion for summary judgment without addressing the motion to unseal. On appeal, the Fourth Circuit held that the district court had improperly sealed the records related to the summary judgment motion in the first place by not applying the First Amendment standard. *Id.* at 132 ("In making the determination whether sealing was appropriate under the First Amendment standard, the district court was bound to follow certain procedures prescribed by the caselaw of this circuit. Fourth Circuit caselaw establishes that there are a number of steps a district court must take before sealing court records."). It then remanded the case for reconsideration "in light of this opinion." *Id.* at 133.

Similarly, an analogous M.D.N.C. case also granted a motion to unseal filed by a party seeking to unseal its motion to dismiss without applying the "change in conditions" standard. *See Syngenta Crop Prot., Inc. v. U.S. E.P.A*., No. 1:02CV00334, 2011 WL 3472635, at *16 (M.D.N.C. Aug. 9, 2011). There, a defendant filed a motion to dismiss for lack of subject-matter

jurisdiction under seal based on the provisions of a protective order. It then immediately filed a motion to unseal its motion and exhibits.

Reviewing the motion to unseal, the M.D.N.C noted that "by its terms, the Protective Order governed 'discovery and the pre-trial stage of this litigation[,]' but did 'not address the introduction of any evidence at the final trial of this matter or the reference to any information in open court at the final trial of this matter.'" *Id.* The M.D.N.C. concluded that the opponent of the motion to unseal did not make "a sufficient showing that its interests override the public right of access under either the common law or First Amendment doctrines of public access." *Id.* On this basis, the M.D.N.C. unsealed the record.

Despite this precedent, Lowe's next argues that the Protective Order means Plaintiff bargained away his right to contest an improperly granted seal. In support of its position, Lowe's cites *Pittston Co. v. United States,* No. CIV.A. 3:97CV294, 2002 WL 32158052, at *2 (E.D. Va. Oct. 2, 2002), *aff'd*, 368 F.3d 385 (4th Cir. 2004).

*Pittston* involved a situation where a party sought to unseal documents filed in support of its summary judgment motion that were originally produced as confidential under a protective order. The E.D. Va. declined to unseal the documents, stating that "[a] party to the protective order cannot later make a public access claim which it bargained away in order to expeditiously receive the documents in the first place." *Id.* On appeal, the Fourth Circuit stated that the district court did not abuse its discretion in denying the motion to unseal, explaining that the plaintiff "itself agreed to the sealing of the documents in order to benefit from a more open discovery . . ." *Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004). The *Pittston* opinions do not discuss the exact provisions of the protective order at issue. However, the

district court's order states that "[t]he Protective Order allows parties to designate certain material as protected. Such material is then filed under seal." *Pittston,* 2002 WL 32158052, at *1.

Here, in contrast, the Protective Order expressly states that the parties understood any documents filed with the Court *are public documents* and that such documents can and will be sealed only *in accordance with applicable law*. Applicable Fourth Circuit law requires application of the First Amendment standard where parties seek to seal documents in connection with motions for summary judgment. *See Rosenfeld*, 25 F. App'x at 127; *See also Rushford*, 846 F.2d at 254 ("The reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents. We, therefore, remand the case to the district court for such a determination.") Accordingly, it cannot be said that Plaintiff "bargained away" his right to assert a public access claim to the documents, nor can Lowe's sincerely claim, as it does multiple times, that it produced documents in reliance "on Plaintiff's agreement that the produced documents would remain confidential and sealed in accordance with the protective order." (*See, e.g.* Doc. No. 137, at 4.) Lowe's was on notice from the outset of discovery that the First Amendment standard applies to documents filed in connection with summary judgment.

Indeed, more recent opinions uniformly establish that "courts in the Fourth Circuit have made it clear that the mere fact that a document was subject to a blanket protective order does not relieve the parties or a court of the obligation to comply with the Fourth Circuit's otherwise applicable sealing regimen." *Colony Ins. Co. v. Peterson*, No. 1:10CV581, 2012 WL 1047089, at *2 (M.D.N.C. Mar. 28, 2012). *See Hall v. United Air Lines, Inc.,* 296 F.Supp.2d 652, 679–80 (E.D.N.C. 2003) (ordering unsealing of documents filed under seal pursuant to protective order unless parties filed "a brief complying with the Fourth Circuit's mandate, demonstrating the

necessity and propriety of sealing information" and observing that, in entering protective order prospectively authorizing sealed filings, "magistrate judge did not review the motion in accordance with the mandatory procedure outlined by the Fourth Circuit in *Stone* " (internal brackets, ellipses, and quotation marks omitted)).  *See also Syngenta Crop*, 2011 WL 3472635, at *16.  These cases flatly contradict Lowe's position that the entry of a protective order prohibits parties from contesting an improperly imposed seal.

Finally, Lowe's incorrectly equates the First Amendment test articulated in *Rushford* and the three-part common law balancing test articulated in *In re Knight*.  (Doc. No. 105, at 6–7; Doc. No. 137, at 3.)  Plaintiff correctly points out that the *In re Knight* standard applies where the right of access to the document in question arises from the common law, not the First Amendment.  (Doc. No. 109, at 8–9.)  *See, e.g. Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (describing the *In re Knight* balancing test, and calling it the "the common law balancing test").

### B.  The Court will unseal the summary judgment briefing and those exhibits on which the parties reached agreement to either unseal or redact.

Lowe's articulates no opposition to Plaintiff's request to unseal the summary judgment briefing the parties filed in this case.  Accordingly, the Court will grant Plaintiff's Motion to Unseal Document Numbers 72, 79, and 97.  In addition, based on the parties' agreement, the Court will grant Plaintiff's Motion to Unseal the following exhibits:

(i)      Doc. No. 72–2
(ii)     Doc. No. 72–6
(iii)     Doc. No. 72–8
(iv)     Doc. No. 72–9
(v)      Doc. No. 72–10
(vi)     Doc. No. 72–11
(vii)    Doc. No. 72–12
(viii)   Doc. No. 72–13
(ix)     Doc. No. 72–14
(x)      Doc. No. 84–2

(xi) Doc. No. 84–3

(xii) Doc. No. 84–4

(xiii) Doc. No. 84–5

(xiv) Doc. No. 84–6

(xv) Doc. No. 84–7

(xvi) Doc. No. 84–8

(xvii) Doc. No. 84–9

(xviii) Doc. No. 85–2

(xix) Doc. No. 85–3

(xx) Doc. No. 85–4

(xxi) Doc. No. 85–5

(xxii) Doc. No. 86–1

(xxiii) Doc. No. 86–2

(xxiv) Doc. No. 86–3

(xxv) Doc. No. 86–4

(xxvi) Doc. No. 87–2

(xxvii) Doc. No. 87–3

(xxviii) Doc. No. 87–4

(xxix) Doc. No. 87–5

(xxx) Doc. No. 87–6 (with agreed-on redactions)

(xxxi) Doc. No. 87–7

(xxxii) Doc. No. 87–8

(xxxiii) Doc. No. 87–9

(xxxiv) Doc. No. 87–10

(xxxv) Doc. No. 87–11

(xxxvi) Doc. No. 87–12

(xxxvii) Doc. No. 87–13

(xxxviii) Doc. No. 87–14

(xxxix) Doc. No. 87–15

(xl) Doc. No. 88–1

(xli) Doc. No. 88–2

(xlii) Doc. No. 88–3

(xliii) Doc. No. 88–5 (with agreed-on redactions)

(xliv) Doc. No. 88–6

(xlv) Doc. No. 88–7

(xlvi) Doc. No. 88–8

(xlvii) Doc. No. 88–9

(xlviii) Doc. No. 88–10

(xlix) Doc. No. 88–11 (with agreed-on redactions)

(l) Doc. No. 88–12 (with agreed-on redactions)

(li) Doc. No. 88–13

(lii) Doc. No. 88–14

(liii) Doc. No. 88–15

(liv) Doc. No. 88–16

(lv) Doc. No. 88–18

(lvi) Doc. No. 88–19

(lvii)     Doc. No. 88–20
(lviii)    Doc. No. 88–21
(lix)      Doc. No. 89–4
(lx)       Doc. No. 89–5
(lxi)      Doc. No. 90–6
(lxii)     Doc. No. 90–7
(lxiii)    Doc. No. 90–8
(lxiv)     Doc. No. 91–2
(lxv)      Doc. No. 91–3
(lxvi)     Doc. No. 92–1
(lxvii)    Doc. No. 92–2
(lxviii)   Doc. No. 92–3
(lxix)     Doc. No. 92–4
(lxx)      Doc. No. 92–5
(lxxi)     Doc. No. 92–6
(lxxii)    Doc. No. 92–7
(lxxiii)   Doc. No. 92–8
(lxxiv)    Doc. No. 92–9
(lxxv)     Doc. No. 92–10
(lxxvi)    Doc. No. 92–11
(lxxvii)   Doc. No. 92–12
(lxxviii)  Doc. No. 93–1
(lxxix)    Doc. No. 93–3
(lxxx)     Doc. No. 93–4
(lxxxi)    Doc. No. 93–5
(lxxxii)   Doc. No. 94–1
(lxxxiii)  Doc. No. 94–2
(lxxxiv)   Doc. No. 94–3
(lxxxv)    Doc. No. 94–4
(lxxxvi)   Doc. No. 94–5
(lxxxvii)  Doc. No. 94–6
(lxxxviii) Doc. No. 95–1
(lxxxix)   Doc. No. 95–2
(xc)       Doc. No. 95–4
(xci)      Doc. No. 95–5
(xcii)     Doc. No. 95–6
(xciii)    Doc. No. 95–7
(xciv)     Doc. No. 97–2

a.  <u>Application of the *Rushford* standard.</u>

Next, the Court turns to the exhibits on which the parties could not reach agreement.  The

Court finds that the public had adequate notice that the sealing of documents may occur and that

interested persons were given adequate opportunity to object by nature of the fact that each

motion to seal was docketed.  *See Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 728 (M.D.N.C.2013) (explaining that docketing the motions to seal was sufficient public notice and noting "[a]ny interested party therefore has had sufficient time to seek intervention to contest any sealing order, but the docket reflects no such action").  Accordingly, the Court turns to step three of the *Rushford* analysis: whether Lowe's has articulated any private interest sufficiently compelling to defeat the First Amendment right of access.

Earlier this year, the M.D.N.C. reviewed what types of private interests may overcome the First Amendment right of access.  *See P&L Dev. LLC v. Bionpharma Inc*., No. 1:17CV1154, 2019 WL 2079830, at *2 (M.D.N.C. May 10, 2019).  There, the court noted that

> at least one court has found that "the parties must establish a high likelihood of substantial and irreparable harm if the motions to seal are denied." *Companion Prop. & Cas. Ins. Co. v. Wood*, No. 3:14-cv-03719-CMC, 2017 WL 279767, at *2 (D.S.C. Jan. 23, 2017) (analyzing *Public Citizen*, 749 F.3d at 269–70). The Eastern District of Virginia has thoroughly analyzed the application of the First Amendment right of access in the context of non-governmental interests. *See Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580-83 (2009). There, the court recognized that "in limited circumstances" some courts have found that "certain" "private interests might also implicate higher values sufficient to override . . . the First Amendment presumption of public access." *Id.* at 580. Examples of those private interests include a criminal defendant's Sixth Amendment right to a fair trial, privacy interests of non-parties, trade secrets, attorney-client relationships, and contractual non-disclosure provisions. *Id.* at 580–83 (citing cases from various federal courts). Even so, the courts have been careful to note that these interests outweigh the First Amendment presumption of access only in certain circumstances. *Id.* at 580–83.

*P&L Dev. LLC*, 2019 WL 2079830, at *2.  Further, the Fourth Circuit "has never permitted wholesale sealing of documents based upon unsubstantiated or speculative claims of harm, let alone harm to a company's reputation."  *Doe v. Pub. Citizen*, 749 F.3d 246, 270 (4th Cir. 2014).

With these principles in mind, the Court turns to each contested exhibit.

**(i)      Excerpts from the Robert Niblock deposition (Doc. Nos. 72-3; 87-1)**

Lowe's states that the deposition of Robert Niblock may be unsealed with the exception of certain excerpts identified concerning compensation, assessments and evaluations of Niblock and non-party executives, discussions of non-party Lowe's executives as a potential CEO successor, Lowe's business strategies, personnel information of nonparties, and Lowe's financial data. (Doc. No. 137–2, at 2–3.)  The Court concludes that a majority of the testimony identified by Lowe's for redaction should not be available for public inspection as it constitutes confidential personal and business information for which the risk of harm to Lowe's and nonparties outweighs any public right to access.  *See Guessford v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. 1:12CV260, 2014 WL 12594127, at *6 (M.D.N.C. Sept. 30, 2014) (sealing performance evaluations of non-party employees of defendant); *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2013 WL 1091054, at *2 (E.D.N.C. Mar. 15, 2013) (maintaining seal on "confidential financial and business information which, if made public, could harm the parties' business interests," and this "risk outweighs the public's right to access these documents"); *E.E.O.C. v. New Hanover Reg'l Med. Ctr.*, No. 7:09-CV-85-D, 2012 WL 4321626, at *4 (E.D.N.C. Sept. 20, 2012) (sealing "confidential and personal information of nonparties" where the risk of harm to these individuals outweighs any public right to access").  In particular, the Court notes Lowe' s argument that the testimony is "sensitive and confidential because, by its very nature, [it] reveals how Lowe's analyzes potential leaders and implicates other individuals in the organization who may be pursuing leadership positions."  Moreover, the Court did not rely on most of the testimony identified in rendering its decision on Lowe's Motion for Summary Judgment.  Accordingly, keeping those portions of the deposition under seal does not infringe upon the public's interest in assessing the basis of the court's decision in this matter. *See*

*McKesson Corp. v. Longistics Transportation, Inc.,* No. 5:09-CV-250-F, 2010 WL 11564989, at

*12 (E.D.N.C. Nov. 4, 2010).

However, the Court finds that Lowe's has not identified a compelling reason to redact the

portion of the deposition located at 94:7-95:17.  In making this decision, the Court considers the

weight this Order places on the fact that Niblock designated Plaintiff his "hit-by-the-bus

successor" in 2015.  The testimony is a general description of why a "hit-by-the-bus successor"

was named, and Lowe's has not demonstrated how it or any private individual will be harmed by

the release of such information.  The information is not particularly sensitive, proprietary, or

revealing about Lowe's evaluation of its employees or succession planning, and the Court does

not find that Lowe's has established it will be harmed by its public release.   Accordingly, the

Court finds that the public right of access overrides any confidentiality concerns Lowe's attaches

to this portion of Niblock's deposition.  The Court will grant Plaintiff's motion to unseal the

deposition of Robert Niblock provided that the parties redact the portions identified by Lowe's in

Document 137–3, with the exception of the testimony located at 94:7-95:17.

(ii)       **Excerpts from the Maureen Ausura deposition (Doc. Nos. 72-4; 85-1)**

Lowe's states that the deposition of Maureen Ausura may be unsealed with the exception

of certain excerpts identified concerning Lowe's succession planning process, compensation, and

use of outside assessments by Lowe's board of directors.  For the same reasons expressed above

regarding the redaction of Niblock's testimony, the Court will grant Plaintiff's motion to unseal

the deposition of Maureen Ausura, provided that the parties redact the portions of the deposition

identified by Lowe's in Document 137–3.

(iii)       **Excerpts from the Jennifer Weber deposition (Doc. Nos. 72-5; 90-1; 97-4)**

Lowe's states that the deposition of Jennifer Weber may be unsealed with the exception

of certain excerpts identified concerning the personnel records and performance of nonparty

Lowe's employees, her prior employment at other companies, and Lowe's succession planning process. For the same reasons expressed above regarding the redaction of Niblock's testimony, the Court will grant Plaintiff's motion to unseal the deposition of Jennifer Weber, provided that the parties redact the portions of the deposition identified by Lowe's in Document 137–3.

**(iv)**      **Excerpts from the George Bridgeford deposition (Doc. Nos. 72-7; 84-1; 97-3)**

Lowe's states that the deposition of George Bridgeford may be unsealed with the exception of certain excerpts identified concerning the performance of nonparty Lowe's employees, Lowe's business strategies, and Lowe's succession planning process. For the same reasons expressed above regarding the redaction of Niblock's testimony, the Court will grant Plaintiff's motion to unseal the deposition of George Bridgford, provided that the parties redact the portions of the deposition identified by Lowe's in Document 137–3.

**(v)**      **Exhibits concerning personal information of Richard Maltsbarger (Doc Nos. 88-4; 91-1; 91-4; 93-2; 116-2; 116-3)**

The Court finds that Documents 88-4; 91-1; 93-2; 116-2; and 116-3 solely contain private personnel information of a nonparty. The risk of harm to Maltsbarger posed by the unsealing of these documents outweighs any public right of access, particularly given that the Court did not rely on these documents in resolving Lowe's Motion for Summary Judgement. Accordingly, the Court denies Plaintiff's Motion to Unseal with respect to Documents 88-4; 91-1; 93-2; 116-2; and 116-3.

Lowe's requests the Court redact only pages 7–13 of Document 91–4 because those pages contain private personnel information. The Court agrees, and finds that redaction of these pages is appropriate for the same reason it denies Plaintiff's Motion to Unseal as to Documents 88-4; 91-1; 93-2; 116-2; and 116-3. Accordingly, Plaintiff's Motion to Unseal is granted as to Document 91–4, subject to redaction of pages 7–13.

**(vi)        9/12/16 Monthly Board Letter and Financial Outlook (Doc. No. 88-17)**

Lowe's seeks to keep this document sealed because it "contains information that continues to be confidential." Upon review, the main letter discusses detailed sales data and the attachments contain consolidated financial information. The Court finds that this information constitutes confidential business and financial information and that the risk of harm to Lowe's posed by its disclosure outweighs public interest in access, particularly given that the Court did not rely on this document in resolving Lowe's Motion for Summary Judgment. Accordingly, Plaintiff's Motion to Unseal is denied with respect to Document 88–17.

**(vii)        Excerpts from the James Morgan deposition (Doc. Nos. 89-1; 97-5)**

Lowe's contends that all deposition testimony from James Morgan should remain sealed. The Court finds that Lowe's has not articulated that it or anyone else will be harmed by unsealing of the Morgan deposition with redactions as specified. In particular, it notes that this Order relies on Morgan's testimony regarding comments Niblock made to the board of directors in August 2016 as evidence of Niblock's sincere belief that Plaintiff was disengaging from his role at Lowe's.

Lowe's argues that if the Court grants Plaintiff's Motion to Unseal, it should only do so if it redacts portions of Morgan's testimony concerning his work history, discussion of other Lowe's employees, the Lowe's board of directors' view of Lowe's employees as potential CEO candidates, and discussion of the inner workings of the Lowe's board of directors. For the same reasons expressed *supra,* the Court agrees these redactions are appropriate given the risk of harm to individuals and Lowe's compared to the public interest in accessing the redacted testimony. The Court particularly notes that it did not rely on the redacted testimony in resolving Lowe's Motion for Summary Judgment. Accordingly, the Court will grant Plaintiff's motion to unseal

the deposition of James Morgan, provided that the parties redact the portions of the deposition identified by Lowe's in Document 137–3.

### (viii) Board of Directors Succession Planning Update, November 2016 (Doc. No. 89-2)

Lowe's argues that this document should remain sealed because it contains "forward-looking marketing strategy, strategic responses to changes in the retail industry, analysis of Lowe's competition, and an assessment of the leadership potential of various Lowe's employees, including some who are still employed by Lowe's and some who may not be aware they were ever part of the aforementioned assessment." (Doc. No. 137–2, at 6.) The Court finds that Lowe's has adequately articulated that it will be harmed by the release of this document, and that nothing short of sealing is available. *See Silicon Knights, Inc. v. Epic Games, Inc*., No. 5:07–CV–275–D, 2011 WL 901958, at *2 (E.D.N.C. Mar. 15, 2011) (finding the First Amendment right of access overcome by party's showing that materials it sought to seal "contain[ed] confidential and proprietary commercial information, including information relating to alleged trade secrets and other highly sensitive financial and business information belonging to the parties as well as third-parties, information which is of utmost importance to them but not generally available to the public or bearing importance to any public matters")). Furthermore, the Court notes that it does not rely on this document in assessing and granting Lowe's Motion for Summary judgment. Therefore, keeping it under seal does not infringe upon the public's interest in assessing the basis of the court's decision in this matter. For these reasons, the Court denies Plaintiff's Motion to Unseal Document 89–2.

### (ix) Korn Ferry Succession Planning Update, 11/11/16 (Doc. No. 89-3; 90-5)

Lowe's argues that this document should remain sealed because it contains Korn Ferry's "assessment and advice regarding Lowe's forward-looking marketing and succession strategy

and includes much of the same information contained in Dkt. 89-2." Lowe's notes that the same document was also filed as Document 90–5. For the same reasons the Court denied Plaintiff's Motion to Unseal as to Document 89–2, it also denies Plaintiff's Motion to Unseal as to Documents 89–3 and 90–5.

(x)     **Documents related to diversity at Lowe's (Doc. Nos. 116-5; 90–2; 90-3, 90–4)**

Lowe's argues that these documents, which contain information related to diversity among Lowe's employees and executives, should remained sealed because "[n]either party's case rests on the information contained in these documents" and "can only serve to embarrass and harass Lowe's." Lowe's cites *SMD Software* for the proposition that the Court should keep sealed "confidential financial and business information which, if made public, could harm the parties' business interests." 2013 WL 1091054, at *2. The Court finds that Lowe's has adequately articulated that unsealing these documents would result in harm to Lowe's business interests, and that redaction as opposed to sealing is not warranted based on the fact that almost all of the information contained in these documents would require redaction. Furthermore, the Court notes that it does not rely on these documents in assessing and granting Lowe's Motion for Summary judgment. Therefore, keeping them under seal does not infringe upon the public's interest in assessing the basis of the court's decision in this matter. Accordingly, the Court will deny Plaintiff's Motion to Unseal with respect to Documents 116–5, 90–2, 90–3, and 90–4.

(xi)    **Contents of Jones bag or briefcase carried with him on day of termination (Doc. No. 95-3)**

Lowe's asks the Court to keep sealed Document 95–3 because it "consists of nearly 100 pages of Lowe's confidential financial data that was not apparently made or intended to be made public." In addition, it contains "portions of an internal presentation." The Court finds that Lowe's has adequately articulated that it will be harmed by the release of these documents, and that

nothing short of sealing is available to prevent such harm. *See Silicon Knights*, 2011 WL 901958, at *2. Furthermore, the Court notes that it does not rely on these documents in assessing and granting Lowe's Motion for Summary judgment. Therefore, keeping the exhibit under seal does not infringe upon the public's interest in assessing the basis of the court's decision in this matter. Accordingly, Plaintiff's Motion to Unseal is denied as to Document 95–3.

### C. Lowe's Motions to Seal Documents 105 and 137

Lowe's also filed two motions to seal filings unrelated to its Summary Judgment Motions. Lowe's asked the Court to seal Document 105, its Opposition to Plaintiff's Motion to Unseal, as well as Document 137, its "Court-Ordered Status Report Regarding Documents and Testimony to Remain Sealed." The Court first finds that these documents are not subject to the First Amendment guarantee of access as they are not filed in connection with a summary judgement motion. *See Stone*, 855 F.2d at 180. Therefore, the common law presumption in favor of access applies and can be rebutted upon a showing that "the public's right of access is outweighed by competing interests." *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D),* 707 F.3d 283, 290 (4th Cir. 2013) (quoting *In re Knight,* 743 F.2d at 235)). Here, the Court finds that Lowe's has not demonstrated that a competing interest outweighs the public's right of access. The motions to seal reference the protective order the parties entered into in October 2017 and state that Documents 105 and 137 contain sensitive and confidential business information. However, upon review by the Court, these briefs do not actually contain any confidential or sensitive business information. The Court will therefore only grant Lowe's motion to seal to the extent it seeks to seal Document 137–3, which contains detailed descriptions of documents and excerpted testimony the Court has ruled will remained sealed.

## V.    CONCLUSION

**NOW THEREFORE IT IS ORDERED THAT**:

Lowe's Motion for Summary Judgment (Doc. No. 71) is **GRANTED,** Plaintiff's

Complaint is **DISMISSED**, and **SUMMARY JUDGMENT** is hereby entered in favor of

Defendant on the claims in this action.  Plaintiff's Motion to Unseal (Doc. No. 100) is

**GRANTED IN PART** and **DENIED IN PART**.  Lowe's Motion to Seal Document 105 (Doc.

No. 104) is **DENIED**, and Lowe's Motion to Seal Document 137 (Doc. No. 138) is

**GRANTED IN PART**.  Lowe's Motion to Seal Document 72 (Doc. No. 106) is **DENIED.**

**WITHIN TWENTY-ONE DAYS**, Lowe's is **ORDERED** to submit to the Clerk of Court

redacted versions of the exhibits that are to be unsealed with redaction as discussed in this

Order.  **SO ORDERED ADJUDGED AND DECREED**.

Signed: August 29, 2019

Kenneth D. Bell
United States District Judge